UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALTON ROBINSON | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. A:04CV371-SS |
| | § | |
| AETNA LIFE INSURANCE COMPANY | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION FOR
## SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Defendant Aetna Life Insurance Company ("Aetna") moves for summary judgment on all claims asserted by Plaintiff Alton Robinson ("Robinson") against Aetna in this lawsuit and respectfully shows as follows:

### I. INTRODUCTION AND SUMMARY OF ARGUMENT

As stipulated by Plaintiff, Robinson sues Aetna under Section 502(a) of ERISA[1] to recover long-term disability ("LTD") benefits available under an employee welfare benefit plan (the "Plan") established and maintained by Robinson's former employer, Glazer's Wholesale Drug Company, Inc. ("Glazer"). Aetna, who provided claims administrative services to the Plan, determined that Robinson was disabled from work from August 21, 2002 through November 30, 2003 due to a branch retinal artery occlusion, a condition which affected his peripheral vision in his right eye. Aetna terminated Robinson's benefits, effective November 30, 2003, however, because he was no longer "totally disabled" under the terms of the Plan. Specifically, Aetna

---

[1] The Employee Retirement Income Security Act of 1974, as amended, (ERISA), 29 U.S.C. § 1001 et seq.

determined that Robinson was no longer incapable of performing the material duties of his own occupation as a sales representative.

Robinson's claim to recover additional LTD benefits under the Plan fails because Aetna acted within its discretion in terminating his benefits. Under controlling authority, an ERISA claims administrator's decision may not be disturbed by the courts unless its determination constitutes an abuse of discretion. An administrator, such as Aetna in this case, does not abuse its discretion so long as its claims determination "'fall[s] somewhere on a continuum of reasonableness.'"[2] Here, the administrative record shows that Robinson's own treating physician reported to Aetna that Robinson had **"no restrictions due to ocular vision"** and that there were no additional limitations preventing Robinson from resuming his employment within his own occupation as a sales representative.[3] This, of course, provides not merely a rational basis for Aetna's determination, but dispositive evidence in support of Aetna's decision. Because Aetna did not abuse its discretion, Aetna is entitled to summary judgment on Plaintiff's claims as a matter of law.

## II. FACTS UPON WHICH AETNA RELIES

Pursuant to Local Rule CV-7(b) of the Local Rules of the Western District of Texas, a summary of the facts upon which Aetna relies, along with a supporting affidavit, are included in the Appendix in Support of Defendant's Motion for Summary Judgment filed herewith, and are incorporated herein by reference.

---

[2]  *See MacLachlan v. ExxonMobil Corp.*, 350 F.3d 472, 478 (5th Cir. 2003), *cert. denied*, 124 S. Ct. 2413 (2004) (quoting *Vega v. Nat'l Life Ins. Serv. Co.*, 188 F.3d 287, 297 (5th Cir. 1999)).

[3]  *See* Appendix, Ex. 4, A00049 (emphasis added).

### III. Issue To Be Ruled Upon

Robinson's claim for ERISA plan benefits fails because Aetna did not abuse its discretion in terminating his LTD benefits as a matter of law.

### IV. Argument And Authorities

#### A. Summary Judgment Standard

Summary judgment is proper under Rule 56(c) of the Federal Rules of Civil Procedure "'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'"[4] The mere existence of a factual dispute does not by itself preclude the granting of summary judgment. "[T]he requirement is that there be no genuine issue of material fact."[5]

#### B. Robinson's Claim For ERISA Plan Benefits Fails Because Aetna Did Not Abuse Its Discretion In Terminating His LTD Benefits

Robinson's claim for LTD benefits fails as a matter of law because Robinson is not entitled to any additional Plan benefits under Section 502(a)(1)(B) of ERISA. To show he is entitled to such benefits, Robinson must show that Aetna's denial of his claim was arbitrary and capricious. Aetna's decision was neither arbitrary nor capricious as a matter of law, however, because Aetna had a reasonable basis for its determination that Robinson was no longer disabled under the terms of the Glazer Plan.

##### 1. Aetna's Decision May Not Be Reversed Unless Aetna Abused Its Discretion

Where an ERISA plan gives the claims administrator discretionary authority to determine eligibility for benefits and to construe the terms of the plan, the courts may not reverse the

---

[4] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (quoting FED. R. CIV. P. 56(c)).

[5] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

administrator's decision to deny benefits absent an abuse of discretion.[6] Additionally, and regardless of an express grant of discretionary authority, courts must give deference to the factual determinations of an ERISA claims administrator and review those decisions under the abuse of discretion standard.[7]

In this case, not only does Aetna have discretionary authority to determine claims for benefits under the Plan, the determination at issue is a factual one. Specifically, under the terms of the Plan, Aetna had the discretionary authority to

- determine whether and to what extent employees and beneficiaries are entitled to benefits; and

- construe any disputed or doubtful terms of [the] policy.[8]

As Aetna has the authority to make final claims determinations and construe the terms of the policy, it necessarily has "the discretionary authority to make a final and conclusive determination of the claim."[9] Furthermore, under Fifth Circuit authority, whether Robinson was totally disabled under the terms of the Plan is a factual determination that warrants discretionary review.[10] Therefore, the standard of review to be applied by this Court on Robinson's ERISA claim for benefits is whether Aetna abused its discretion in terminating his LTD benefits.

---

[6] *See Meditrust Fin. Servs. Corp. v. Sterling Chems., Inc. Med. Benefits Plan*, 168 F.3d 211, 213 (5th Cir. 1999); *Pierre v. Conn. Gen. Life Ins. Co.*, 932 F.2d 1552, 1558-59 (5th Cir. 1991).

[7] *Id.*

[8] *See* Appendix, Ex. 1, A00013.

[9] *See Duhon v. Texaco, Inc.*, 15 F.3d 1302, 1305-06 (5th Cir. 1994); *see also Milson v. St. Luke's Episcopal Hosp.*, 71 F. Supp. 2d 634, 640 (S.D. Tex. 1999) ("Plans which authorize the administrator to make a final benefit determination give the administrator 'discretionary authority.'"[citations omitted]).

[10] *See, e.g., Sweatman v. Commercial Union Ins. Co.*, 39 F.3d 594, 597-98 (5th Cir. 1994) (concluding that the district court correctly applied the abuse of discretion standard to MetLife's decision that the plaintiff was not "totally disabled").

2.   **A Claims Administrator Does Not Abuse Its Discretion Unless Its Determination Is Arbitrary And Capricious**

Under the abuse of discretion standard, a court cannot substitute its judgment for the judgment of the claims administrator.[11] Rather, the court must give substantial deference to the administrator's decision.[12] Moreover, in the Fifth Circuit, a claims administrator does not abuse its discretion in determining a claim for benefits unless the decision is arbitrary and capricious.[13] An administrator's decision is <u>not</u> arbitrary and capricious so long as it "'fall[s] somewhere on a continuum of reasonableness – even if on the low end.'"[14] Notably, the court's review of such decision is confined to the administrative record, which consists of the information provided to the administrator prior to the lawsuit.[15]

3.   **Aetna Did Not Abuse Its Discretion In Terminating Robinson's Benefits Because The Administrative Record Supports That He Was Capable Of Performing The Material Duties Of His Own Occupation**

Under the terms of the Plan, Robinson had to remain "totally disabled" from working at his own occupation in order to continue receiving benefits.[16] Although Robinson began

---

[11]   See *Rhodes v. Metro. Life Ins. Co.*, No. Civ.A. 302CV1415L, 2003 WL 21640567, at *6 (N.D. Tex. July 10, 2003) (citing *Denton v. First Nat'l Bank of Waco*, 765 F.2d 1295 (5th Cir. 1985)).

[12]   See *Jordan v. Cameron Iron Works, Inc.*, 900 F.2d 53, 55 (5th Cir. 1990).

[13]   See *Meditrust*, 168 F.3d at 214; *Switzer v. Wal-Mart Stores, Inc.*, 52 F.3d 1294, 1298 (5th Cir. 1995) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 113-17 (1989)).

[14]   *MacLachlan*, 350 F.3d at 478 (emphasis added); *Vega v. Nat'l Life Ins. Serv. Co.*, 188 F.3d at 297; see also *Meditrust*, 168 F.3d at 215 (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828-29 (5th Cir. 1996)). See also *Milson*, 71 F. Supp. 2d at 640-41 ("Furthermore, the Court should review MetLife's decision under an abuse of discretion standard because this case involves MetLife's factual determination that Milson was not totally disabled under the terms of the Plan"); *Salazar v. Owens-Illinois, Inc. Salary Employee Welfare Benefit Plan*, Civ.A. No. 3:94-CV-1785-D, 1997 WL 10022, at *3 (N.D. Tex. Jan. 7, 1997) ("Because Salazar challenges only the factual determination that he was not 'totally disabled,' the abuse of discretion standard applies without a specific showing that the Plan gives the administrator discretionary authority").

[15]   See *Vega*, 188 F.3d at 300.

[16]   Appendix, Ex. 3, A00032; Appendix, Ex. 3, A00042.

receiving LTD benefits due to the branch artery occlusion in his right eye in August 2002, Robinson's treating physician reported to Aetna in the APS dated September 26, 2003 that Robinson no longer had any restrictions or limitations that would prevent him from returning to work.[17] Specifically, Dr. Loose concluded that Robinson had "no restrictions due to ocular vision," and the APS reflected that he was now capable of gainful employment.[18] Indeed, Dr. Loose also specifically indicated that there were no restrictions or limitations on Robinson's activities of daily living including, among other activities, "*driving*, lifting, pulling [and] pushing."[19]

Based on this new information provided by Robinson's treating physician, Aetna conducted a medical review of Robinson's claims file in order to determine his continuing eligibility for benefits under the Plan. As reflected by the administrative record, the claims file supported Dr. Loose's diagnosis that Robinson had no restrictions preventing him from returning to work, and he was therefore no longer disabled under the terms of the Plan. Indeed, under recent Fifth Circuit authority, the APS submitted by Dr. Loose on September 26, 2003, constitutes subsequent medical evidence supporting Aetna's termination of Robinson's LTD benefits effective November 30, 2003.[20]

---

[17] *See* Appendix, Ex. 4, A00049 (emphasis added).

[18] *See* Appendix, Ex. 4, A00048-49.

[19] *Id.* (emphasis added).

[20] *See Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 274 (5th Cir. 2004) (holding that the administrator's termination of LTD benefits was proper because the plan administrator had "acquired subsequent medical evidence that supported termination of her LTD benefits months after it had approved [the plaintiff's] entitlement to them on the basis of the evidence that it had before it at that time.")

### 4. Aetna's Interpretation Of The Glazer Plan Is Reasonable And Is Not An Abuse Of Discretion

Plaintiff has argued that he is disabled from driving, which he asserts is a material duty of his own occupation. The administrative record reflects that after the termination of Robinson's LTD benefits, Robinson's physicians opined that the branch retinal artery occlusion in his right eye may limit Robinson's ability to drive an automobile.[21] Under the terms of the Glazer Plan, however, such a limitation does not disable Robinson from performing the material duties of his own occupation as a sales representative and therefore does not make him eligible for LTD benefits under the Plan.

### (a) Robinson's "Own Occupation" Is A Position Of The Same General Character As His Regular And Ordinary Employment With His Employer

Under the terms of the Glazer Plan, Aetna has discretion to interpret and construe the terms of the Plan.[22] As reflected in the appeal denial letter dated March 5, 2004, Aetna interpreted "own occupation" under the Plan to mean any employment, business, trade, profession, calling or vocation that involves material duties of the same general character as one's regular and ordinary employment with his employer.[23] Indeed, "own occupation" does not simply mean Robinson's ability to perform his particular sales representative *job* at Glazer, but means his ability to perform the material duties of a sales representative in the general economy. Courts have routinely held that such an interpretation of "occupation" by a claims administrator is not an abuse of discretion.[24] Accordingly, Aetna's interpretation of "own occupation" under

---

[21]   *See, e.g.*, Appendix, Ex. 4, A00056; A00059; A00065.

[22]   *See* Appendix, Ex. 1, A00013.

[23]   *See* Appendix, Ex. 4, A00085.

[24]   *See, e.g., Gerhold v. Avondale Indus., Inc.*, No. Civ.A. 02-3386, 2004 WL 602778, at *11 (E.D. La. March 23, 2004) (holding that a plan administrator did not abuse its discretion by determining that a plan member's regular occupation encompassed "a position of the *same general character* as the

the Plan is reasonable and, indeed, legally correct, and is therefore not an abuse of discretion as a matter of law.[25]

### (b) Any Limitation On Robinson's Ability To Drive An Automobile Does Not Render Him Disabled Under The Terms Of The Plan

As explained by Aetna's determination of Robinson's claim on appeal, driving an automobile is not a material duty of the occupation of sales representative in the general economy.[26] Such a determination is reasonable in light of both federal case law and the U.S. Department of Labor standards.

For example, the Dictionary of Occupational Titles ("DOT"), published by The U.S. Department of Labor, does not consider driving a material duty of a sales representative in the general economy.[27] As noted by the Fourth Circuit, the DOT is "widely and routinely used to define occupations in the U.S. economy" and that it is "reasonable for [claim] administrators, and courts, to use it" in making disability determinations under ERISA.[28] Thus, although

---

insured's previous job, requiring similar skills and training, and involving comparable duties.") (emphasis added); *Ehrensaft v. Dimension Works Inc. LTD Plan*, 120 F. Supp. 2d 1253, 1259 (D. Nev. 2000) ("The Court finds that the term, 'occupation,' is a general description, not a specific one . . . A person may not be able to perform a specific job assignment, but still be able to perform the duties generally understood to be part of his or her 'occupation.'"); *Ceasar v. Hartford Life*, 947 F. Supp. 204, (D.C.S.C. 1996) (holding that an administrator did not abuse its discretion in denying claim for LTD benefits because plaintiff's own *occupation* was broader than his *job* which required rotating shifts)(emphasis added).

[25] *Id.*

[26] *See* Appendix, Ex. 4, A00084-85.

[27] *See* U.S. Department of Labor website at http://www.oalj.dol.gov/libdot.htm#definitions, referring DOT definitions to O-Net at http://online.onetcenter.org/link/summary/41-4011.02 ("Sales Representatives, Chemical and Pharmaceutical"). A copy of the information from these websites is attached as Exhibit B for the Court's reference.

[28] *Dionida v. Reliance Standard Life Ins. Co.*, 50 F. Supp. 2d 934, 939 n.4 (N.D. Cal. 1999) ("The D.O.T. is the result of over fifty years of occupational data collection and evaluation for the very specific purpose of defining specific 'occupations.'"); *see also Gallagher v. Reliance Standard Life Ins. Co.*, 305 F.3d 264, 270-73 (4th Cir. 2002) (upholding reliance on DOT as "objectively reasonable" in ERISA action and noting that "[a] general job description of the DOT, to be applicable, must involve comparable duties but not necessarily every duty").

Robinson maintains that he was required to drive "800 to 1000 miles per week" for Glazer,[29] such is not a material duty of a sales representative in the general economy.[30] Indeed "[t]o accept Plaintiff's argument that total disability means that a person cannot physically do some specifically assigned task, would permit employers and employees to arrange for some physically impossible task which the employee is unable to perform and then, based on that inability, declare the employee totally disabled."[31] If this kind of individually tailored gamesmanship were allowed, disability insurance would quickly become prohibitively expensive as insurers raised rates to cope with artificially manufactured inabilities to perform atypical, individualized job requirements. Insurers like Aetna "cannot be expected to anticipate every assignment an employer might place on an employee outside the usual requirements of his or her *occupation*."[32] Accordingly, Aetna's determination that driving is not a material duty of the occupation of sales representative does not amount to an abuse of discretion.

In short, *even if* Robinson is limited in his ability to drive an automobile, as suggested by his physicians on appeal, Robinson has no additional limitations or restrictions preventing him from returning to gainful employment as a sales representative in the general economy. Because driving is not considered a material duty of the occupation of sales representative, Robinson's inability to drive an automobile, without any other restrictions or limitations, does not render him totally disabled under the terms of the Glazer Plan. Accordingly, Aetna did not abuse its discretion in determining Robinson was no longer disabled under the Plan's terms.

---

[29] *See* Appendix, Ex. 4, A00053.

[30] *See, e.g.*, http://online.onetcenter.org/link/details/41-4011.02 (listing 28 "work activities" as having higher importance than "operating vehicles" for a pharmaceutical sales representative in the general economy).

[31] *See Ehrensaft*, 120 F. Supp. 2d at 1259.

[32] *Id.* (emphasis added).

HOU 2409794 5

## V. CONCLUSION

As set forth above, Robinson's claim for LTD benefits under Section 502(a) of ERISA fails as a matter of law because the administrative record shows that Aetna's decision to terminate his disability benefits was legally and factually correct under the terms of the Plan and was not an abuse of discretion, in any event. The administrative record shows that as of September 26, 2003, the medical opinion of Robinson's treating physician was that he had no restrictions or limitations preventing him from returning to work as a sales representative. Moreover, while the administrative record reflects that Robinson may be limited in his ability to drive an automobile, such limitation, without any further restrictions, does not render Robinson disabled under the Plan's definition of total disability for Robinson's occupation as a sales representative. As such, Aetna had a reasonable basis for its determination that Robinson was no longer disabled under the terms of the Glazer Plan as of November 30, 2003. Therefore, Aetna did not abuse its discretion and is therefore entitled to summary judgment on all of Robinson's claims as a matter of law.

## VI.   PRAYER FOR RELIEF

For these reasons, Aetna respectfully requests that the Court grant its motion for summary judgment in its entirety and enter an order that Alton Robinson take nothing in this lawsuit. Aetna requests all other relief to which it is justly entitled.

Respectfully submitted,

OF COUNSEL:
ANDREWS KURTH LLP
and
DIMITRI ZGOURIDES
State Bar No. 00785309
and
EDWARD A. CAVAZOS
State Bar No. 00787223
111 Congress Avenue, Suite 1700
Austin, Texas 78701
Telephone: (512) 320-9279
Telecopier: (512) 542-5202

BY: _____ /by permission
JOHN B. SHELY                        #00795968
State Bar No. 18215300
600 Travis Street, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200
Telecopier: (713) 220-4285

ATTORNEY-IN-CHARGE FOR DEFENDANT
AETNA LIFE INSURANCE COMPANY

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing has been delivered to Plaintiff's counsel by certified mail, return receipt requested, on the 28TH day of February, 2005, addressed as follows:

Lonnie Roach
Bemis, Roach & Reed, L.L.P.
4100 Duval Road, Building One
Suite 200
Austin, Texas 78759

_____ /by permission
John B. Shely                        #00795968

HOU 2409794 5

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ALTON ROBINSON | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. A:04CV371-SS |
| | § | |
| AETNA LIFE INSURANCE COMPANY | § | |
| | § | |
| Defendant. | § | |

## APPENDIX IN SUPPORT OF DEFENDANT'S
## MOTION FOR SUMMARY JUDGMENT AND BRIEF IN SUPPORT

Pursuant to Local Rule CV-7(c) of the United States District Court for the Western District of Texas, Defendant Aetna Life Insurance Company ("Aetna") files this Appendix in Support of its Motion for Summary Judgment and Brief in Support as follows:

### I. FACTS UPON WHICH AETNA RELIES

Robinson was formerly employed by Glazer as a sales representative.[1] As an employee of Glazer, Robinson became eligible for covered LTD benefits under the terms of the Glazer Plan, an employee welfare benefit plan established and maintained by Glazer pursuant to ERISA.[2]

**A.   The ERISA Plan And Its Terms Of Coverage For LTD Benefits**

The Glazer Plan pays eligible employees LTD income benefits for a period of total disability.[3] A period of "total disability" under the terms of the Plan is one for which Aetna determines that the employee is unable to perform the material duties of his own occupation as a

---

[1]   Appendix, Ex. 4, A00096; A00101.

[2]   *See* Appendix, Ex. A, at ¶ 10 (Affidavit of Michael A. Evans); Appendix, Ex. 4, A00101.

[3]   Appendix, Ex. 2, A00022-23; Appendix, Ex. 3, A00031.

result of disease or injury.[4] Under the terms of the Plan, LTD benefits remain payable for as long as the period of total disability continues, subject to all of the Plan's other terms and conditions.[5]

**B.    Robinson's Claim For LTD Benefits Under The Plan**

In September of 2002, Aetna received a claim filed by Robinson seeking LTD benefits under the Glazer Plan.[6] Robinson claimed to be disabled as the result of a diagnosed stroke that he suffered in his right eye.[7] At that time, Aetna also received a Disability Attending Physician's Statement ("APS") dated May 29, 2002 and signed by Isaac Loose, M.D., in connection with Robinson's claim for LTD benefits.[8] After receiving this APS, Aetna determined that Robinson was disabled due to a retinal artery occlusion in his right eye.[9] By letter dated September 19, 2002, Aetna notified Robinson of its determination and, thereafter, he began receiving LTD benefits under the terms of the Plan, effective August 21, 2002.[10]

**C.    Aetna's Decision To Terminate Robinson's LTD Benefits Under The Plan**

A year later, as part of its continuing review of Robinson's disability claim under the terms of the Glazer Plan, Aetna received an updated APS from Dr. Loose on May 8, 2003.[11] In this APS (dated May 1, 2003), Dr. Loose listed Robinson's subjective symptoms as the loss of

---

[4]   Appendix, Ex. 1, A00013; Appendix, Ex. 3, A00031.

[5]   Appendix, Ex. 3, A00032.

[6]   Appendix, Ex. 4, A00096-97; A00053.

[7]   *Id.*

[8]   Appendix, Ex. 4, A00096; A00053.

[9]   Appendix, Ex. 4, A00196.

[10]  Appendix, Ex. 4, A00102-105.

[11]  Appendix, Ex. 4, A00189; A00122-23.

HOU 2412212 1

peripheral vision in his right eye due to the branch retinal artery occlusion.[12] Dr. Loose also noted that Robinson "felt unsafe" driving long distances due to the decreased peripheral vision in his right eye.[13] Although the APS stated that a visual field test was attached to it, Aetna did not receive any visual field tests with the APS at that time.[14]

Six months later, on November 17, 2003, Aetna received another updated APS from Dr. Loose dated September 26, 2003.[15] As reflected in Aetna's business records, Aetna noted that Dr. Loose provided information in the APS that Robinson no longer had any medical restrictions or limitations preventing him from returning to work.[16] Specifically, Dr. Loose concluded in his medical evaluation that Robinson had "no restrictions due to ocular vision."[17] Dr. Loose also indicated that there were no restrictions or limitations on Robinson's activities of daily living including, among other activities, driving, lifting, pulling and pushing.[18] Dr. Loose further reported that Robinson's vision had stabilized and that he was unaware of any limitations that would prevent Robinson from resuming employment.[19]

On November 17, 2003, Aetna conducted a medical review of Robinson's claim to determine whether he continued to remain eligible for LTD benefits in light of the new

---

[12]   Appendix, Ex. 4, A00189; A00122.

[13]   Appendix, Ex. 4, A00123.

[14]   Appendix, Ex. 4, A00189; A00122.

[15]   Appendix, Ex. 4, A00183; A00048.

[16]   Appendix, Ex. 4, A00183; A00049.

[17]   Appendix, Ex. 4, A00049.

[18]   *Id.*

[19]   Appendix, Ex. 4, A00048-49.

information provided by Dr. Loose in the September 26th APS.[20] Aetna's medical consultant noted, among other things, that Dr. Loose had specifically indicated that Robinson had "no restrictions due to ocular history."[21] Additionally, the medical consultant also noted that the documentation in Robinson's claims file supported Dr. Loose's comment that Robinson had no restrictions precluding him from returning to work.[22] Aetna determined that he was no longer totally disabled under the terms of the Plan because he no longer met the Plan's definition of total disability.

By letter dated November 30, 2003, Aetna notified Robinson of its determination.[23] Aetna also advised him that he was no longer eligible for benefits under the Glazer Plan, and that Aetna was terminating his LTD benefits effective November 30, 2003.[24]

### D. Robinson's Appeal Of The Termination Of His LTD Benefits Under The Plan

Aetna received a request for an appeal of the denial of Robinson's claim on December 19, 2003.[25] On appeal, Aetna forwarded Robinson's claims file to a medical director, Oyebode A. Taiwo, M.D., M.P.H., for a medical director review.[26] Aetna's medical director also reviewed additional information Aetna received from Robinson and his treating physicians after his requested appeal on December 19, 2003.[27] Contrary to Dr. Loose's opinions provided in the

---

[20] Appendix, Ex. 4, A00180.

[21] Appendix, Ex. 4, A00180-182.

[22] Appendix, Ex. 4, A00180.

[23] Appendix, Ex. 4, A00051-52.

[24] Appendix, Ex. 4, A00051.

[25] Appendix, Ex. 4, A00180.

[26] Appendix, Ex. 4, A00163-69; A00087-88.

[27] Appendix, Ex. 4, A00168; A00056-65.

September 26th APS, Robinson's physicians submitted letters during his appeal in which they opined that driving "could be hazardous" for Robinson.[28] Other than raising this possible limitation on Robinson's ability to drive an automobile, Robinson's physicians did not recommend any other limitations or restrictions.[29]

Upon review, Aetna determined that the clinical information in Robinson's claims file failed to support his claim of disability as defined by the Plan.[30] By letter dated March 5, 2004, Aetna advised Robinson that after its review on appeal, it was upholding its original decision.[31] As stated in the letter, for Robinson to be eligible for disability benefits he must, among other things, be unable to perform the material duties of his own occupation, meaning any employment, business, trade, profession, calling or vocation that involves material duties of the same general character as one's regular and ordinary employment with his employer.[32] Aetna determined that because driving is not considered a material duty of the occupation of sales representative in the general economy, the clinical information submitted on behalf of Robinson failed to support his claim of disability as defined by the Plan.[33]

---

[28] Appendix, Ex. 4, A00085.

[29] *Id.*

[30] Appendix, Ex. 4, A00086.

[31] Appendix, Ex. 4, A00085-86.

[32] *Id.* Nowhere in the administrative record is there any affirmative order or prescription from any of Robinson's doctors prohibiting him from driving long distances, and he has not suggested that he has lost his driving license or had his driving privileges restricted in any way.

[33] Appendix, Ex. 4, A00086.

## II. EXHIBITS

In support of its Motion for Summary Judgment, Aetna submits the following Exhibits:

Exhibit A:   Affidavit of Michael A. Evans:

    Ex. 1:   Group Life and Accident and Health Insurance Policy issued by Aetna Life Insurance Company to Glazer's Wholesale Drug Company, Inc. and Associated Companies, effective August 1, 1982.

    Ex. 2:   Summary of Coverage for the Glazer Plan, effective January 1, 2000.

    Ex. 3:   Coverage Booklet for LTD, effective January 1, 2000, for LTD benefits available under the Glazer Plan

    Ex. 4:   Documents and information made available to Aetna for consideration prior to Robinson filing his lawsuit on May 18, 2004.

Exhibit B:   Information concerning the occupation of Sales Representative in the general economy from the U.S. Department of Labor website, referring Dictionary of Occupational Title definitions to O-Net.

Respectfully submitted,

BY: _____ /by permission
JOHN B. SHELY                    #00795968
State Bar No. 18215300
600 Travis Street, Suite 4200
Houston, Texas 77002
Telephone: (713) 220-4200
Telecopier: (713) 220-4285

ATTORNEY-IN-CHARGE FOR DEFENDANT
AETNA LIFE INSURANCE COMPANY

OF COUNSEL:
ANDREWS KURTH LLP
and
DIMITRI ZGOURIDES
State Bar No. 00785309
and
EDWARD A. CAVAZOS
State Bar No. 00787223
111 Congress Avenue, Suite 1700
Austin, Texas 78701
Telephone: (512) 320-9279
Telecopier: (512) 542-5202

## CERTIFICATE OF SERVICE

A true and correct copy of the foregoing has been delivered to Plaintiff's counsel by certified mail, return receipt requested, on the 28TH day of February, 2005, addressed as follows:

Lonnie Roach
Bemis, Roach & Reed, L.L.P.
4100 Duval Road, Building One
Suite 200
Austin, Texas 78759

John B. Shely / by permission
#00795968

-7-

HOU 2412212 1

# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

## Notice of Document/Attachment(s) Not Imaged but Stored with Document in Case File

### See Original File to View/Copy Document/Attachment(s)

Civil Case No.     A-04-CA-371 SS

ALTON ROBINSON

VS.

AETNA LIFE INS. CO.

| | |
|---|---|
| Attachments to Document #: | 16 |
| Description: | Defendant's Motion for Summary Judgment and Brief in Support |
| File Date: | 2/28/05 |
| Prepared by: | MLC |

**This sheet to be imaged as the last page.**