UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| **ALTON ROBINSON** | § | |
| | § | |
| **VS.** | § | **CIVIL ACTION NO. A:04CV371-SS** |
| | § | |
| **AETNA LIFE INSURANCE COMPANY** | § | |

### PLAINTIFF'S RESPONSE TO
### DEFENDANT'S MOTION FOR SUMMARY JUDGEMENT

Plaintiff, Alton Robinson, files this response to Defendant's Motion for Summary Judgement and in support thereof would show:

### Nature of This Case

This case is brought under the civil enforcement provisions of the Employee Retirement Income Security Act, of 1974, ("ERISA"), specifically, including those provisions outlined in 29 U.S.C. § 1132(a)(1)(B). Plaintiff is a participant in and beneficiary of an employee welfare plan, which includes an insurance policy, ("the plan") issued by Aetna Life Insurance Company, ("Aetna") to plaintiff's employer, Glazer's Wholesale Drug Company, ("Glazer's"). The plan provides long-term disability ("LTD") benefits to plaintiff should he become disabled from his own occupation. References to the administrative record ("AR") in this response will be to the Bates numbered pages attached as Exhibit "A" to Defendant's Motion for Summary Judgement.

### Objection to Defendant's Summary Judgment Evidence

Robinson objects to all evidence under tab "B" of the appendix to Defendant's motion. Those documents are not part of the administrative record. Once the administrative record is determined, the Court is precluded from receiving evidence to resolve disputed material facts. *Vega v. National Life Ins. Services Co.*, 188 F.3d 287,299 (5th Cir. 1999 (*en banc*)). Additionally, this

evidence is not relevant to the case at bar.  Alton Robinson was a field sales representative for a wholesale liquor distributor (AR 96), not a pharmaceutical sales representative.

## Background

Alton Robinson was a successful, 61 year old Field Sales Representative of Glazer's, a wholesale liquor distributor, on March 16th, 2002.   His job responsibilities required him to drive approximately 800 to 1000 miles per week (AR 53).  On that date, Mr. Robinson suffered a branch retinal arterial occlusion (stroke) in his right eye permanently impairing his field of view.  Robinson was told by both of  his treating physicians  that it was dangerous for him to drive given this significant, visual field loss (AR 56, 59).  Because his occupation required extensive driving (AR 127, 196), Robinson was forced to stop working and apply for long term disability benefits.

Aetna, Robinson's insurer reviewed the LTD claim and on August 21, 2002 determined that, pursuant to the plan, Robinson was totally disabled from his own occupation (AR 102).   On September 26, 2003, Dr. Isaac Loose, Mr. Robinson's primary treating physician signed an attending physicians statement ("APS") stating that he had not medically restricted Mr. Robinson from any activities of daily living and  included the statement "no restrictions due to ocular history" on that portion of the APS inquiring as to physical capabilities of Mr. Robinson (AR 49).  Aetna, apparently interpreted this to mean that Robinson had recovered and was no longer prevented from driving (AR 51).  On November 30, 2003 Aetna denied further benefits.

It is unclear from the administrative record why Aetna would feel Robinson recovered in light of the two previous statements completed by Dr. Loose clearly stating that it was unsafe for Mr. Robinson to drive and that his condition was permanent (AR 121, 123).   Nevertheless, any confusion as to Dr. Loose's opinion with regard to Mr. Robinson's condition was clarified in

Robinson's appeal which included a letter from Dr. Loose stating: "Driving is hazardous for this patient, especially in heavy traffic areas.  Please review his disability benefits."  (AR 56).  Mr. Robinson's other treating physician, Dr. C. Armitage Harper similarly wrote: "It is unsafe for [Robinson] to drive any vehicle with this visual field loss."  (AR 59).

In response to Robinson's appeal, Aetna referred his file to a physician of its choice, Dr. Oyebode Taiwo, an occupational medicine specialist for clinical review.  After reviewing the records, Dr. Taiwo determined that Robinson's condition was serious and permanent, and that he was incapacitated from any occupation which required the operation of a motor vehicle (AR 88).

In light of the unanimity among physicians, including its own, that Robinson is totally disabled from any occupation, such as field sales representative, that requires driving an automobile, Aetna changed its reason for denying Robinson's claim in its denial of Robinson's appeal.  On March 5, 2004 Aetna wrote Robinson denying his appeal on the grounds that its vocational consultant opined that driving is not a material duty of a "sales representative" in the general economy (AR 85).  The administrative record contains no report from a vocational consultant.  This statement is completely usupported by the record.

From the time of Robinson's stroke through the time of this writing, Robinson's condition has not changed.  Robinson's job description did not change.  The terms of the plan have not changed.  The only thing that has changed is Aetna's decision.  Aetna was aware that Robinson was a "field sales representative" as opposed to a "sales representative" (AR 196) and purportedly denied Robinson's appeal based on an opinion of a vocational consultant which does not exist in the administrative record.  Its denial of Robinson's appeal was arbitrary and capricious and should be overturned.

3

## Standard of Review

An administrator's denial of benefits under an ERISA plan is reviewed under a *de novo* standard unless the benefit plan gives the administrator discretionary authority to determine eligibility for benefits or to construe the benefits of the plan. *Firestone Tire and Rubber Co. v. Bruch,* 489 U.S. 101, 115 , 109 S. Ct. 948, 103 L. Ed. 2d 80 (1989). Because the Aetna plan does appear to vest the administrator with discretion, this court reviews Aetna's determination on an abuse of discretion standard. *Id.* In the instant case, however, there is an inherent conflict of interest because the administrator of the plan is also the insurer of the plan. (*See Affidavit of Michael Evans, paragraph 4, attached to Defendant's motion*). Since the same entity that determines eligibility for benefits must also fund  those benefits, the court must  accord less deference to Aetna's determination. *Vega v. Nat'l Life Ins. Servs., Inc.,* 188 F. 3d 287, 296 (5th Cir. 1999). In *Vega,* the court held:

> " We hold that when a fiduciary exercises discretion in  interpreting a disputed term of the contract where one interpretation will further the financial interest of the fiduciary, we will not act as deferentially as would otherwise be appropriate.  Rather, we will review the merits of the interpretation to determine whether it is consistent with an exercise of discretion by a fiduciary acting free of the interests that conflict with those of the beneficiaries.  In short, the fiduciary decision will be entitled to some deference, but this deference will be lessened  to the degree necessary to neutralize any untoward influence resulting from the conflict." Id.

In these types of cases, the court should not make forgiving inferences when confronted with a record that arguably does not support the administrator's decision. *Vega,* at 299.  Without some *concrete evidence* in the record that supports the denial of the claim, the court must find that Aetna abused its discretion. *Vega,* at 302. Furthermore, this court must view the administrative record in its entirety.  Aetna cannot unreasonably rely on statements contained in the record to deny

4

Robinson's claim without considering them in the context of all the relevant facts and evidence presented. *Lain v. UNUM Life Insurance Company of America* 279, F. 3d 337, 347 (5ᵗʰ Cir. 2002). Summary judgment should be granted only if there is no genuine issue of material fact and Aetna is entitled to judgment as a matter of law. Fed.R.Civ.P 56(c). In determining whether there is a genuine issue of material fact, this court reviews the evidence, and the inferences to be drawn therefrom, in the light most favorable to Robinson. *Daniels v. City of Arlington, Tex.* 246 F.3d 500,502 (5ᵗʰ Cir. 2001).

When considered in its entirety, there is no *concrete evidence* in this record which supports Aetna's denial of benefits to Robinson. Defendant's Motion for Summary Judgement should be denied.

## Argument and Authorities

The Fifth Circuit applies a two-pronged test when reviewing an administrator's denial of benefits. First, it determines the legally correct interpretation of the plan. *Tolson v. Avondale Industries Inc.*, 141 F. 3ʳᵈ 604, 608 (5ᵗʰ Cir. 1998). Should the court find that the administrator failed to give the plan the legally correct interpretation, then the court determines whether the administrator's decision was an abuse of discretion. *Id.*

### A.    The Legally Correct Interpretation

According to the plan, benefits are due while Robinson is  totally disabled.  The plan states:

> "You are deemed to be totally disabled while you are not able, solely
> due to injury or disease, to perform the material duties of your own
> occupation;" (AR 31).

It is hardly disputable that the administrative record establishes that Robinson is precluded by his eye injury from driving an automobile in his employment. Every doctor, including Aetna's

5

clinical reviewer agrees (*see* AR 56,59,87-88). Furthermore, the record establishes that Robinson was required to drive between 800 and 1000 miles every week as part of his job (AR 53). Robinson's occupation required him to operate a car 25% of his day (AR 127). Aetna's own analysis determined that:

> "As a field sales rep claimant is required to drive 25%+ of the time. Given claimants age, and restrictions on driving reasonable that claimant is unable to perform his own occupation at this time." (AR 196).

Driving an automobile was clearly a material duty of Robinson's own occupation. Indeed, Aetna's own analysis indicated that Robinson was totally disabled under the terms of the plan (AR 102). The legally correct interpretation of the plan requires his claim to be approved.

### B.    Aetna Abused Its Discretion

Aetna denied Robinson's claim on the basis of Dr. Loose's APS dated September 26, 2003. Aetna interpreted the statement "no restrictions due to ocular history" as demonstrating that Robinson could return to his work (AR 51). It is apparent however, that Dr. Loose did not feel it was now safe for Robinson to drive. Doctor's Loose's letter, dated December 12, 2003 (AR 56) makes that clear. It is likely that Dr. Loose was simply stating, in that APS, that Robinson's ability to perform physical labor was not impacted by his ocular history. On appeal, Robinson refuted Aetna's interpretation and demonstrated that his condition had not, in fact, changed. Indeed, the evidence on appeal, which included Aetna's own clinical review, was even stronger in support of disability (*see* AR 87, 88). Aetna therefor changed its reason for denying Robinson's claim on appeal to argue that Robinson was a "sales rep" as opposed to a "field sales rep" (AR 85). At the time Aetna made this representation, it was aware of the distinction (*compare* AR 85 to AR 196). This was a gross oversimplification of categorizing Robinson's "own occupation". There are as many different types

6

of "sales reps" as there are products to sell. The Department of Labor Dictionary of Occupational Titles lists over 275 different types of sales persons. It lists over 60 different types of field representatives. The description Aetna chose to attach to its motion, that of pharmaceutical sales representative, is not even remotely similar to Robinson's occupation.

When Aetna denied Robinson on the grounds that his occupation did not require driving an automobile, it should have given him an opportunity to appeal on those grounds. It did not. It denied him for one reason, denied his appeal for a different reason, then closed his file (AR 86).

Aetna was required by ERISA, 29 U.S.C. § 1133 to :

(1)     provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial, written in a manner calculated to be understood by the participant, and

(2)     afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim.

Aetna did not afford Robinson a reasonable opportunity for a full and fair review because it never informed Robinson of the final reason for denying his claim until he had exhausted his administrative remedies. No further evidence would have been required however, because the record already demonstrates that driving was a material duty of Robinson's occupation (*see* AR 53, 127, 196). There is no *evidence* in the administrative record to the contrary. The only suggestion to the contrary appears in the appeal denial letter (AR 86), where Aetna infers that it obtained a vocational consultation. Since no vocational analysis appears in the administrative record, this statement is completely unsubstantiated.

7

Aetna's reliance on its mystery "vocational consultant" to deny Robinson's appeal further demonstrates is abuse of discretion. When Aetna chose to deny Robinson's claim, it was required to provide Robinson with a "full and fair" review. 29 U.S.C. § 1133 (2). This required Aetna to:

> " (iv) Provide for the identification of medical or **vocational experts** whose advise was obtained on behalf of the plan in connection with a claimant's adverse benefit determination, without regard to whether the advice was relied upon in making the benefit determination;" (emphasis added). 29 C.F.R. 2560.503-1 (h)(3)(iv).

By failing to identify its vocational consultant (because in truth, no vocational consultation was done), Aetna is deemed to have denied Robinson a full and fair review. Federal regulations governing the administration of ERISA claims provide:

> "(4) Plans providing disability benefits. The claims procedures of a plan providing disability benefits will not, with respect to claims for such benefits, be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures comply with the requirements of paragraphs...(h)(3)[(iv)]... of this section." 29 C.F.R. 2560.503-1 (h)(4).

Robinson's experience and expertise as a field sales representative for a major alcoholic beverage distributor allowed him to earn a substantial income (AR 101). A part-time clerk at a clothing retailer could be said to be a sales representative, but this does not mean that the clerk's own occupation is the same as Alton Robinson's. In *House v. American United Life Insurance Co.* 2002 WL 31729483 (E.D. La.), the Court examined plan language almost exactly like the Aetna plan. Walter House was a trial lawyer who became disabled from practicing stressful trial law due to a heart condition. His insurer denied House claiming that House was "capable of performing the

sedentary occupation of an Attorney as it is normally performed in the national economy." (*House P. 9*). After examining the AUL plan, the Court noted:

> "There is no contractual definition of either the terms "the substantial and material duties" or the term "regular occupation." It is well-settled in the Fifth Circuit that, in construing language of ERISA plans, federal law must follow the doctrine of *contra proferentem*, which directs that when plan terms are ambiguous after applying ordinary principles of contract interpretation, courts construe them strictly in favor of the insured. Where the term "regular occupation" is not defined in the Plan, a fiduciary must adopt an appropriate description of the claimant's occupation." (*Id.* At 8).

The Court noted that the AUL plan was an "own occupation" plan as is the case in Aetna's plan at issue (AR 31, 182). In ruling that AUL abused its discretion in denying House, the Court held that "Attorney" and "Trial Attorney" are two separate occupations. The Court ruled that "Equating these disparate activities reflects a plain lack of objectivity and an abuse of discretion by AUL." (*Id.* at 11).

Most courts that have examined similar issues have reached the same result. *See Dixon v. Pacific Mutual Life Ins. Co.*, 268 F.2d 812, 815 (2d. Cir. 1959) *cert. denied sub nom* 361 US 948 (1960) (Physician employed as hospital superintendent still totally disabled from occupation of surgeon). *Raithaus v. UNUM Life Ins. Co. of Am.*, 335 F. Supp 2d 1098 (D. Hawaii 2004) (Urologist who could no longer perform surgery disabled even though he still could practice medicine. Surgery was a material duty of his regular occupation). *Matten v. SMA Life Assurance*, 2002 WL 31433405 (N.D. Ill.) (Focus was on whether insured could perform the duties of "Trial Attorney" rather than "Attorney"). *Hoffert v. Commercial Ins. Co. Of Newark*, 739 F. Supp. 201 (S.D. N.Y. 1990). (Surgeon distinct from physician). *Rahman v. Paul Revere Life Ins. Co.*, 684 F. Supp. 192 (N.D. Ill. 1988) (doctor's "regular occupation" was that of emergency cardiologist, rather than cardiologist).

In its motion, Aetna expends considerable effort instructing the Court on the extent of its discretion. It scarcely acknowledges that discretion is accorded to **fiduciaries**. As fiduciary, Aetna owed Robinson a duty of scrupulous good faith and candor. When it recognized, by its own clinical review, that its reason for denying Robinson's claim was invalid, it should have reinstated benefits. Instead, it changed its reason for denying benefits to argue that Robinson's own occupation did not require driving an automobile. If this was true, then why did Aetna specifically request its clinical reviewer, Dr. Taiwo address this issue? (AR 87). Why did Robinson's "own occupation" require the use of an automobile on August 21, 2002, but not on March 5, 2004? Why did Aetna infer it had obtained a vocational consultation but fail to identify the vocational consultant, as required by federal regulation, or include the consultant's report in the administrative record, as required by ERISA? Aetna cannot rely on the discretion it seeks to enjoy but forsake the trust its fiduciary capacity demands. Its decision in this case was arbitrary and capricious and should be reversed.

## Conclusion

Aetna owed a fiduciary duty to Robinson to fairly determine his claim and appeal. All medical documentation in the file verifies Robinson is unable to perform the material duties of a field sales representative. There is no *concrete evidence* to the contrary. As such, the court is required to find an abuse of discretion. At a very minimum, a fact issue exists precluding summary judgement.

WHEREFORE, Plaintiff Alton Robinson respectfully prays that the Court deny Defendant's Motion for Summary Judgement and for such further general relief as warranted.

Respectfully submitted,

BEMIS, ROACH & REED, L.L.P.
4100 Duval Road, Bldg. I, Suite 200
Austin, Texas  78759
(512) 454-4000
(512) 453-5335 (facsimile)

By: _____
LONNIE ROACH
State Bar No. 16967600

## CERTIFICATE OF SERVICE

I, Lonnie Roach, do hereby certify that a true and correct copy of the Plaintiff's Response to Defendant's Motion for Summary Judgement, has been served via certified mail # 7004 1350 0001 2633 7855 return receipt requested, upon Defendant's attorneys listed below, on this 10th day of March, 2005.

_____
LONNIE ROACH
State Bar No. 16967600

Andrews Kurth, L.L. P.                    **Via Certified Mail Return Receipt Requested**
John B. Shelly                            **#7004 1350 0001 2633 7855**
600 Travis, Suite 4200
Houston, Texas 77002
(713) 220-4200
(713) 220-4285 (fax)