IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

ALTON ROBINSON,
    Plaintiff,

-vs-                                              Case No. A-04-CA-371-SS

AETNA LIFE INSURANCE COMPANY,
    Defendant.

_____

**ORDER**

BE IT REMEMBERED on the 29th day of March 2005, the Court reviewed the file in the above-styled cause, and specifically Defendant Aetna Life Insurance Company's ("Aetna") Motion for Summary Judgment [#16], Plaintiff Alton Robinson's ("Robinson") Response thereto [#18], and Aetna's Reply [#19]. Having considered the motion, the response and the reply, the relevant law, and the case file as a whole, the Court now enters the following opinion and orders.

**I.    Background**

This is a lawsuit governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.* The plaintiff, Robinson, sues Defendant Aetna under § 502(a) of ERISA to recover long-term disability benefits available under an employee welfare benefit plan (the "Plan") established and maintained by Robinson's former employer, Glazer's

Wholesale Drug Company, Inc. ("Glazer"), a wholesale liquor distributor. Aetna provided claims administration services to the Plan. Although Robinson originally alleged state causes of action against the Plan, he now concedes the Plan is a qualifying ERISA plan and therefore is pursuing only his ERISA claim. Pl.'s Stipulation of an ERISA Claim [#15].

Robinson was formerly employed by Glazer as a sales representative. Def.'s Mot., Ex. 4 (Docs. and information made available to Aetna for consideration prior to Robinson filing his lawsuit on May 18, 2004) at A00096, A00101. Robinson maintains he was required to drive "800 to 1,000 miles per week" for Glazer. *Id.* at A00053. On March 16, 2002, Robinson suffered a stroke in his right eye which, he contends, renders him totally disabled from driving. *Id.*

In September of 2002, Aetna received a claim filed by Robinson seeking long-term disability benefits under the Plan.[1] Def.'s Mot., Ex. 4 at A00053, A00096–97. Robinson claimed to be disabled as a result of the diagnosed stroke he suffered in his right eye. *Id.* At that time, Aetna also received a Disability Attending Physician's Statement ("APS") dated May 29, 2002 and signed by Isaac Loose, M.D., in connection with Robinson's claim for long-term disability benefits. *Id.* at A00053, A00096. After receiving this APS, Aetna determined that Robinson was

---

[1] The Plan pays eligible employees long-term disability benefits for a period of total disability. Def.'s Mot., Ex. 2 (Summ. of coverage for the Plan, effective January 1, 2000) at A00022–23; Ex. 3 (Coverage Booklet for long-term disability benefits available under the Plan, effective January 1, 2000) at A00031. A period of total disability under the terms of the Plan is one for which Aetna determines the employee is unable to perform the material duties of his own occupation as a result of disease or injury. *Id.*, Ex. 1 (Group Life and Accident and Health Insurance Policy issued by Aetna to Glazer, effective August 1, 1982) at A00013; Ex. 3 at A00031. Under the terms of the Plan, long-term disability benefits remain payable for as long as the period of total disability continues, subject to all of the Plan's other terms and conditions. *Id.*, Ex. 3 at A00032.

disabled due to a retinal artery occlusion in his right eye. *Id.* at A00196. By letter dated September 19, 2002, Aetna notified Robinson of its determination and, thereafter, he began receiving long-term disability benefits under the terms of the Plan, effective August 21, 2002. *Id.* at A00102–105.

A year later, as part of its continuing review of Robinson's disability claim under the terms of the Plan, Aetna received an updated APS from Dr. Loose on May 8, 2003. *Id.* at A00122–23, A00189. In this APS, dated May 1, 2003, Dr. Loose listed Robinson's subjective symptoms as the loss of peripheral vision in his right eye due to the branch retinal artery occlusion. *Id.* at A00122, A00189. Dr. Loose also noted that Robinson "felt unsafe" driving long distances due to the decreased peripheral vision in his right eye. *Id.* at A00123.

Six months later, on November 17, 2003, Aetna received another updated APS from Dr. Loose dated September 26, 2003. *Id.* at A00048, A00183. As reflected in Aetna's business records, Aetna noted Dr. Loose provided information in the APS that Robinson no longer had any medical restrictions or limitations preventing him from returning to work. *Id.* at A00049, A00183. Specifically, Dr. Loose concluded in his medical evaluation that Robinson had "no restrictions due to ocular vision." *Id.* at A00049. Dr. Loose also indicated there were no restrictions or limitations on Robinson's activities of daily living including, among others, driving, lifting, pulling, and pushing. *Id.* Dr. Loose further reported Robinson's vision had

stabilized and he was unaware of any limitations that would prevent Robinson from resuming employment. *Id.* at A00048–49.

On November 17, 2003, Aetna conducted a medical review of Robinson's claim to determine whether he continued to remain eligible for long-term disability benefits in light of the new information provided by Dr. Loose in the September 26 APS. *Id.* at A00180. Aetna's medical consultant noted, among other things, Dr. Loose had specifically indicated Robinson had "no restrictions due to ocular history." *Id.* at A00180–182. Additionally, the medical consultant also noted the documentation in Robinson's claims file supported Dr. Loose's comment Robinson had no restrictions precluding him from returning to work. *Id.* at A00180. Aetna determined Robinson was no longer totally disabled under the terms of the Plan because Robinson no longer met the Plan's definition of total disability.

By letter dated November 30, 2003, Aetna notified Robinson of its determination. *Id.* at A00051–52. Aetna also advised Robinson he was no longer eligible for long-term disability benefits under the Plan, and Aetna was terminating his benefits effective November 30, 2003. *Id.* at A00051.

Robinson appealed the denial of his claim on December 19, 2003. *Id.* at A00180. On appeal, Aetna forwarded Robinson's claims file to a medical director, Oyebode A. Taiwo, M.D., M.P.H., for a medical director review. *Id.* at A00087–88; A00163–69. Aetna's medical director also reviewed additional information Aetna received from Robinson and his treating physicians

after his requested appeal on December 19, 2003. *Id.* at A0056–65; A00168. Contrary to Dr. Loose's opinions provided in the September 26 APS, Robinson's physicians submitted letters during his appeal in which they opined driving "could be hazardous" for Robinson. *Id.* at A00085. Other than raising this limitation, Robinson's physicians did not recommend any other limitations or restrictions. *Id.*

Upon review, Aetna determined the clinical information in Robinson's claims file failed to support his claim of disability as defined by the Plan. *Id.* at A00086. By letter dated March 5, 2004, Aetna advised Robinson after its review on appeal, it was upholding its original decision. *Id.* at A0085–86.

Subsequently, Robinson filed this lawsuit to recover the long-term disability benefits he contends Aetna wrongfully denied him. Aetna contends there is significant evidence in the administrative record that supports its finding Robinson is not totally disabled and therefore moves for summary judgment on Robinson's ERISA claim.

**II.   Analysis**

   **A.   Summary Judgment Standard**

Summary judgment may be granted if the moving party shows there is no genuine issue of material fact, and it is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c). In deciding summary judgment, the Court construes all facts and inferences in the light most favorable to the nonmoving party. *Richter v. Merchs. Fast Motor Lines, Inc.*, 83 F.3d 96, 98

(5th Cir. 1996). The standard for determining whether to grant summary judgment "is not merely whether there is a sufficient factual dispute to permit the case to go forward, but whether a rational trier of fact could find for the nonmoving party based upon the record evidence before the court." *James v. Sadler*, 909 F.2d 834, 837 (5th Cir. 1990).

Both parties bear burdens of production in the summary judgment process. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). First, the moving party has the initial burden of showing there is no genuine issue of any material fact and judgment should be entered as a matter of law. FED. R. CIV. P. 56(c); *Celotex*, 477 U.S. at 322–23; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). The nonmoving party must then come forward with competent evidentiary materials establishing a genuine fact issue for trial and may not rest upon the mere allegations or denials of its pleadings. *Anderson*, 477 U.S. at 256–257; *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). However, "[n]either 'conclusory allegations' nor 'unsubstantiated assertions' will satisfy the non-movant's burden." *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996).

**B.    ERISA Claim**

In his complaint, Robinson alleges he is entitled to recover under the civil enforcement provision of ERISA, 29 U.S.C. § 1132(a)(1)(B). ERISA's civil enforcement provision enables an ERISA plan participant such as Robinson to bring a civil action "to recover benefits due to him under the terms of his plan." 29 U.S.C. § 1132(a)(1)(b). The parties do not dispute that under the

Plan, long-term disability benefits are due to a participant who is totally disabled. The Plan defines total disability as follows:

> You are deemed to be totally disabled while you are not able, solely because of injury or disease, to perform the material duties of your own occupation.

Def.'s Mot., Ex. 3 (Coverage Booklet for long-term disability benefits available under the Plan, effective January 1, 2000) at A00031.

### 1. Standard of Review

Aetna, acting as administrator of the Plan, concluded Robinson was no longer totally disabled under the terms of the Plan because he no longer met the Plan's definition of total disability and therefore denied him further benefits under the Plan. The parties do not dispute that this determination by Aetna is entitled to deference by this Court, although they do dispute the degree of deference. In a situation where a plan participant challenges a denial of ERISA benefits by a plan administrator under § 502(a)(1)(B) of ERISA, 29 U.S.C. § 1132(a)(1)(B), courts employ a de novo standard of review unless the plan gives the administrator "discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Robinson does not contest the Plan in this case vests the administrator with discretion, Pl.'s Resp. at 4, and therefore, the proper standard of review is abuse of discretion—that is, the Court must ascertain whether Aetna acted arbitrarily or capriciously when it determined that Robinson is not totally disabled. *Lain v. Unum Life Ins. Co. of Am.*, 279 F.3d 337, 342 (5th Cir. 2002). "A decision is arbitrary when made 'without a rational connection

between the known facts and the decision or between the found facts and the evidence.'" *Id.* (quoting *Bellaire Gen. Hosp. v. Blue Cross Blue Shield*, 97 F.3d 822, 828 (5th Cir. 1996)). Thus, Aetna's decision to deny Robinson benefits will be upheld if it is "based on evidence, *even if disputable*, that clearly supports the basis for its denial." *Id.* (emphasis added) (quoting *Vega v. Nat'l Life Ins. Servs., Inc.*, 188 F.3d 287, 299 (5th Cir. 1999) (en banc)). On the other hand, Aetna's decision will not be upheld unless it is supported by "'some *concrete evidence* in the administrative record that supports the denial of the claim.'" *Id.* (quoting *Vega*, 188 F.3d at 302) (emphasis added by *Lain* court).

Robinson argues Aetna's decision is entitled to less deference because under the Plan, it acts as both administrator and insurer, thereby generating a conflict of interest. Pl.'s Resp. at 4. The Fifth Circuit applies a "sliding scale" to the abuse of discretion standard when the administrator is demonstrated to have acted under a conflict of interest and therefore, "[t]he greater the evidence of conflict on the part of the administrator, the less deferential our abuse of discretion standard will be.'" *Id.* at 343 (quoting *Vega*, 188 F.3d at 297). However, when only a "minimal basis for a conflict is established," a court reviews the administrator's decision with "only a *modicum less* deference than we otherwise would." *Id.* (quoting *Vega*, 188 F.3d at 301) (emphasis added by *Lain* court). In *Lain*, the district court held the administrator had an "inherent conflict of interest" because it was both the insurer and the plan administrator and therefore accorded the administrator's decision to deny the plaintiff's claim a "modicum less deference." *Id.* The Fifth

Circuit held it need not decide whether the district court's decision to apply a lesser standard of deference constituted error, nor apply the *Vega* "sliding scale", because the overwhelming evidence in the record of the plaintiff's disability and the absence of any concrete evidence to the contrary, would lead to the same decision regardless which standard was applied. *Id.* In any event, the Court in this case holds Aetna's decision is entitled to at least a modicum less deference under the *Vega* sliding scale because it is undisputed that Aetna acted both as plan administrator and insurer. Def.'s Mot., Ex. A (Aff. of Michael A. Evans) ¶ 4.

### 2.  **Denial of Benefits by Aetna**

The Court now turns to the question of whether the administrative record contains concrete evidence that supports Aetna's determination Robinson is not totally disabled. Because the Court finds Aetna had a reasonable basis for its determination that Robinson was no longer disabled under the terms of the Plan, the Court grants Aetna's motion for summary judgment.

Under the terms of the Plan, Robinson had to remain totally disabled from working at his own occupation in order to continue receiving benefits. Def.'s Mot., Ex. 3 at A00032, A00042. Although Robinson began receiving long-term disability benefits due to the branch artery occlusion in his right eye in August of 2002, Robinson's treating physician reported to Aetna in the APS dated September 26, 2003 that Robinson no longer had any restrictions or limitations that would prevent him from returning to work. *Id.*, Ex. 4 at A00049. Specifically, Dr. Loose concluded Robinson had "no restrictions due to ocular vision," and the APS reflected he was now

capable of gainful employment. *Id.* at A00048–49. Dr. Loose also indicated there were no restrictions or limitations on Robinson's activities of daily living including, among other activities, "driving, lifting, pulling [and] pushing." *Id.*

Based on this new information provided by Robinson's treating physician, Aetna conducted a medical review of Robinson's claims file in order to determine his continuing eligibility for benefits under the Plan. Aetna contends, as reflected by the administrative record, the claims file supported Dr. Loose's diagnosis that Robinson had no restrictions preventing him from returning to work, and he was therefore no longer disabled under the terms of the Plan. Under recent Fifth Circuit authority, the APS submitted by Dr. Loose on September 26, 2003, constitutes subsequent medical evidence supporting Aetna's determination of Robinson's long-term disability benefits effective November 30, 2003. *Ellis v. Liberty Life Assurance Co.*, 394 F.3d 262, 274 (5th Cir. 2004) (holding the administrator's termination of long-term disability benefits was proper because the administrator had "acquired subsequent medical evidence that supported termination of her [long-term disability] benefits months *after* it had approved [the plaintiff's] entitlement to them on the basis of the evidence that it had before it at that time.") (emphasis in original).

Robinson's chief argument is he is unable to drive an automobile which, he contends, renders him totally disabled from any gainful employment as a sales representative.[2] In making

---

[2] The Court notes nowhere in the administrative record does there appear to be any affirmative order or prescription from any of Robinson's doctors prohibiting him from driving long distances, and he has not suggested he has lost his driving license or had his driving privileges restricted in any way.

this argument, Robinson challenges Aetna's interpretation of the Plan by arguing the term "own occupation" under the Plan's definition of total disability should be limited to Robinson's ability to perform his specific job at Glazer and not his ability to perform the material duties of his occupation as a sales representative in the general economy, as the Plan is interpreted by Aetna.

Under the terms of the Plan, Aetna is vested with the authority to interpret the terms of the Plan. Def.'s Mot., Ex. 1 (Group Life and Accident and Health Insurance Policy issued by Aetna to Glazer, effective August 1, 1982) at A00013. As reflected in the administrative record, Aetna interpreted "own occupation" under the Plan to mean Robinson's ability to perform the material duties of a sales representative in the general economy, not his ability to perform employer-specific assignments required for his particular job with Glazer. Courts have held Aetna's interpretation of "own occupation" by a claims administrator is not an abuse of discretion. *Gerhold v. Avondale Indus., Inc.*, No. CIV.A.02-3386, 2004 WL 602778, at *11 (E.D. La. Mar. 23, 2004) (holding a plan administrator did not abuse its discretion by determining a plan member's regular occupation encompassed "a position of the same general character as the insured's previous job, requiring similar skills and training, and involving comparable duties."); *Ehrensaft v. Dimension Works Inc. Long Term Disability Plan*, 120 F. Supp. 2d 1253, 1259 (D. Nev. 2000) ("This Court finds that the term, 'occupation,' is a general description, not a specific one . . . A person may not be able to perform a specific job assignment, but still be able to perform the duties generally understood to be part of his or her 'occupation.'"); *Ceasar v. Hartford Life & Acc. Ins. Co.*, 947 F. Supp. 204

-11-

(D.S.C. 1996) (holding an administrator did not abuse its discretion in denying claim for long-term disability benefits because the plaintiff's own occupation was broader than his job).

Aetna's conclusion driving an automobile is not a material duty of the occupation of sales representative in the general economy is reasonable in light of both federal case law and the United States Department of Labor Standards.[3] For example, the Dictionary of Occupational Titles, published by the United States Department of Labor, does not identify driving as a material duty of a sales representative in the general economy. United States Department of Labor website *available at* http://www.oalj.dol.gov/libdot.htm#definitions (last visited Mar. 24, 2005), referring Dictionary of Occupational Titles definitions to O-Net *available at* http://online.onetcenter.org/ (last visited Mar. 24, 2005). The Dictionary of Occupational Titles is widely and routinely used to define occupations in the United States economy. *Dionida v. Reliance Standard Life Ins. Co.*, 50 F. Supp. 2d 934, 940 (N.D. Cal. 1999); *see also Gallagher v. Reliance Standard Life Ins.*, Co. 305 F.3d 264, 270–73 (4th Cir. 2002) (upholding reliance on Dictionary of Occupational Titles as "objectively reasonable" in ERISA action and noting "[a] general job description of the [Dictionary of Occupational Titles], to be applicable, must involve comparable duties but not necessarily every duty"). Thus, although Robinson maintains he was required to drive

---

[3] Robinson objects to Aetna's presentation of the United States Department of Labor's Dictionary of Occupation Titles as part of the administrative record. Pl.'s Resp. at 1–2. However, contrary to Robinson's assertion in his response, Aetna does not represent these documents are part of the administrative record. Rather, Aetna attached these documents to demonstrate the reasonableness of its interpretation of the Plan (which is part of the administrative record) in light of the United States Department of Labor's Dictionary of Occupation Titles. Robinson's objection is thus without merit.

"800 to 1,000 miles per week" for Glazer, such is not a material duty of a sales representative in the general economy. Def.'s Mot., Ex. 4 at A00053. *See, e.g.*, Dictionary of Occupational Titles definitions *available at* http://online.onetcenter.org/link/summary/41-4011.02 (last visited Mar. 24, 2005) (listing 28 work activities as having higher importance than operating vehicles for a pharmaceutical sales representative in the general economy).[4]

In sum, Robinson's claim under § 502(a) of ERISA to recover long-term disability benefits fails as a matter of law because the administrative record shows Aetna's decision to terminate his disability benefits was not unreasonable. The administrative record shows as of September 26, 2003, the medical opinion of Robinson's treating physician was that he had no restrictions or limitations preventing him from returning to work as a sales representative. Moreover, while the administrative record reflects Robinson *may be limited* in his ability to drive an automobile, such limitation, without any further restrictions, does not render Robinson disabled under the Plan's definition of total disability for Robinson's occupation as a sales representative. Under these circumstances, this Court cannot determine that Aetna's decision to deny benefits to Robinson was unreasonable.

---

[4] Under Robinson's reasoning, it would be the employer, not the plan administrator, who would—for the purposes of administering disability benefits—determine the material duties of the occupation of sales representative. *See Ehrensaft*, 120 F. Supp. 2d at 1259 ("To accept Plaintiff's argument that total disability means that a person cannot physically do some specifically assigned task, would permit employers and employees to arrange for some physically impossible task which the employee is unable to perform and then, based upon that inability, declare the employee totally disabled.").

### III. Conclusion

In accordance with the foregoing:

IT IS ORDERED that Robinson's state law claims are DISMISSED WITH PREJUDICE, as Robinson concedes these claims are preempted by ERISA; and

IT IS FURTHER ORDERED that Aetna's Motion for Summary Judgment [#16] is GRANTED with regard to Robinson's remaining claim under ERISA.

SIGNED this the 29th day of March 2005.

/s/ Sam Sparks
SAM SPARKS
UNITED STATES DISTRICT JUDGE